**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARILYN POSTLEWAITE and PAMELA POSTLEWAITE,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**WELLS FARGO BANK N.A., NDEX WEST, LLC,**<br><br>    **Defendants.** | Case No.: 12-CV-04465 YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT WELLS FARGO BANK N.A.** |

## I.   INTRODUCTION

In October 2011, defendant Wells Fargo Bank N.A. ("Wells Fargo") allegedly promised to postpone the foreclosure sale of plaintiffs' home if plaintiffs, among other things, paid by a date certain approximately $45,000 in arrearages on a mortgage of which Wells Fargo was the beneficiary. Allegedly, before the agreed-upon date came, Wells Fargo unexpectedly sold the subject property at public auction, resulting in plaintiffs' loss of their familial home.

Plaintiffs' First Amended Complaint asserts four claims against both Wells Fargo and foreclosure trustee NDeX West, LLC ("NDeX"): (1) to set aside sale, (2) to cancel trustee's deed, (3) to quiet title, and (4) to get an accounting. (Dkt. No. 27 ("FAC").) Now before the Court is Wells Fargo's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 67 ("Motion").) In the Motion, Wells Fargo asserts affirmative defenses of res judicata, litigation privilege, and common interest privilege. The Motion is fully briefed and NDeX joins the Motion. (Dkt. Nos. 71 ("Opp'n"), 73 ("Reply"), 74 ("Joinder").) Having fully considered the

arguments of the parties, the pleadings, and documents properly incorporated by reference or subject to judicial notice, and for the reasons set forth herein, the Motion is **GRANTED IN PART AND DENIED IN PART**. The Court dismisses plaintiffs' fourth claim, for an accounting, but otherwise denies the Motion.[1]

## II.     BACKGROUND

### A.     TRANSFERS OF INTEREST IN THE SUBJECT PROPERTY

In the procedural posture of this case, the Court takes as true all the factual allegations of the FAC. The subject property is a home in San Mateo, California, built in 1951 for Philomena F. Mitchell, the mother of plaintiff Marilyn Postlewaite and grandmother of plaintiff Pamela Postlewaite, and thereafter lived in continually by plaintiffs' family. (¶¶ 1, 8.)[2] In 1993, Mitchell created The Philomena F. Mitchell Living Trust ("Trust") and named plaintiffs as the beneficiaries and successor trustees. (¶¶ 1, 12; Ex. H.)

On August 1, 2006, when Mitchell was 99 years old, Wells Fargo provided her with a negatively amortizing home mortgage loan in the amount of $585,000 secured against the subject property. (¶¶ 2, 9.) The FAC suggests, somewhat unclearly, that a conservatorship matter pertaining to Mitchell's estate was ongoing at the time, though no conservator had yet been appointed. (*See* ¶¶ 4, 11.)[3] A few weeks later, on August 26, 2006, the subject property was conveyed to the Trust, with Mitchell as trustee. (¶ 10.) Marilyn was thereafter designated successor trustee. (¶ 10.) However, the conservatorship matter prompted Marilyn to agree on December 21,

---

[1] In addition to the three affirmative defenses at the center of its Motion, Wells Fargo also asserts the negative defense of failure to state a claim with respect to plaintiffs' claim for an accounting. Wells Fargo argues that plaintiffs cannot obtain an accounting because they seek to identify how much money they owe, as opposed to how much money Wells Fargo owes them. (Motion at 12.) Plaintiffs concede that their claim for an accounting should be dismissed. (Opp'n at 9.) Accordingly, the Court **GRANTS** Wells Fargo's Motion as to plaintiffs' claim for an accounting. That claim is **DISMISSED WITH PREJUDICE**.

[2] Unless otherwise noted, citations to "(¶ __)" refer to paragraphs of the FAC and citations to "(Ex. __)" refer to exhibits attached to the FAC.

[3] The FAC is also supports an inference that Mitchell's having taken out the loan *prompted* the conservatorship proceeding.

2

2006 to have the San Mateo Public Guardian act as temporary conservator and successor trustee of the Trust. (¶ 11.) A few days later, on December 28 and 29, 2006, a conservator for Mitchell's estate was appointed and letters of conservatorship were recorded. (¶ 11; Ex. G.)

On June 21, 2007, Mitchell died. (¶ 4; Ex. B, ¶ 3.) Title to the subject property, now encumbered with the mortgage, passed to the conservator as successor trustee. (*See* ¶ 13; Exs. G, H.) On September 10, 2007, the California Superior Court for San Mateo County appointed third party Western National Trust Company ("Western National") to serve as successor trustee. (Ex. B, ¶ 4.) On March 12, 2008, the conservator executed a trust transfer deed transferring her interest in the subject property to Western National as successor trustee. (¶ 13; Ex. I.)

On June 3, 2010, the Superior Court ordered the subject property transferred to plaintiffs as tenants-in-common, each with a 50 percent undivided interest. (¶ 14; Ex. B.) On June 24, 2010, Western National quitclaimed the property to plaintiffs. (¶ 15; Ex. C.) The quitclaim deed was recorded on June 29, 2010. (Ex. C.)

**B.     FORECLOSURE PROCEEDINGS**

In January and again in March of 2011, Wells Fargo and NDeX recorded notices of default and elections to sell the subject property. However, they sent these notices to Western National, not plaintiffs, despite plaintiffs' interests having been recorded the previous June. (¶ 16; Exs. J, K.) On April 18, 2011, Wells Fargo substituted NDeX as trustee of the mortgage. (¶ 16; Ex. L.)

On June 30, 2011, Wells Fargo and NDeX sent notice of their intent to sell the subject property at public auction, but, again, sent notice to Western National, not plaintiffs. (¶ 16.) A week later, on July 6, 2011, Western National notified defendants by letter that they had sent notice to the wrong party, copying both plaintiffs on the letter. (¶ 17; Ex. M.)

On July 14, 2011, plaintiffs learned that a trustee's sale had been noticed for a week later, July 21. They contacted Wells Fargo, whose representative stated that Wells Fargo would send a loan modification package and that the July 21 sale "was 'discontinued[,]' which plaintiff understood to be stopped." (¶ 18.) However, "approximately three weeks later," i.e., in early August, plaintiffs received notice of a trustee's sale set for August 19, 2011. (¶ 19.) This time, calls to Wells Fargo

did not result in a discontinuation of the sale. (¶ 19.) Wells Fargo refused an offer to "pay the arrearages" and stated that it could not discontinue the August 19 sale date. (¶ 19.)

### C.    FILING OF THE FIRST LAWSUIT

On August 17, 2011, two days before the planned sale, Pamela (but not Marilyn) instituted a civil action against Wells Fargo and NDeX in the California Superior Court for San Francisco County, wherein Pamela asserted six causes of action: (1) breach of contract, (2) fraud, (3) negligence, (4) "intentional tort," (5) "California Foreclosure Prevention Act," and (6) declaratory and injunctive relief. (¶ 20; RJN, Ex. F ("2011 Complaint").)[4]  Notably, Pamela filed the 2011 Complaint through counsel, attorney Jonathan Adriel Fried, of whom more shall be said shortly.

Wells Fargo removed the 2011 Complaint from state court to this Court on September 14, 2011. (¶ 20; N.D. Cal. Case No. 11-cv-04563-PJH (the "2011 Action"), Dkt. No. 1.)[5] Two days later, on September 16, 2011, Pamela's then-counsel Fried contacted counsel for Wells Fargo, Yaw-Jiun "Gene" Wu of Anglin, Flewelling, Rasmussen, Campbell, & Trytten, LLP (which firm, the Court notes, continues to represent Wells Fargo in the action now at bar, though Wu has entered no appearance). Though the FAC is not overly clear about certain details, it makes plain enough that Fried told Wu that his client had on hand the sum required to reinstate the loan, and that Fried and Wu worked out a deal to do so. They agreed that Wells Fargo would continue the foreclosure sale date from September 23, 2011 to October 21, 2011 and would reinstate the loan, and that in exchange plaintiffs would tender the reinstatement amount of $44,813.49 before the sale date and

---

[4] The Court **GRANTS** Wells Fargo's unopposed request for judicial notice. (Dkt. No. 68 ("RJN").) The documents attached thereto consist of public court filings, recorded instruments, and documents from government websites. Fed. R. Evid. 201(b)(2); *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). Moreover, several of the documents, including the 2011 Complaint, are relied upon by the FAC. Those documents the Court incorporates by reference, which results in their allegations being taken as true. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court **OVERRULES** plaintiffs' relevancy objection to Exhibit N of Wells Fargo's RJN, which is a copy of a disciplinary complaint against Fried. (Opp'n at 1.) The Court finds those proceedings relevant to the question of whether the judgment entered in the earlier civil action was one to which preclusive effect should be given.

[5] The FAC incorrectly states this date as September 15, not 14. The judicially noticeable notice of removal filed on the Court's public docket supplies the correct date.

4

1    refrain from pursuing further litigation or declaring bankruptcy. (*See* ¶¶ 21-22; *see also* Dkt. No. 33

2    at 4-6 (denying Wells Fargo's motion to dismiss the FAC on the basis it failed to allege a valid

3    agreement between plaintiffs and Wells Fargo).)

4          On September 20, 2011, Wells Fargo, through its counsel at the Anglin Flewelling firm, filed

5    a motion to dismiss the 2011 Action. (RJN, Ex. G.) Wu signed the motion himself. (*Id.* at 13.)

6    The FAC is silent as to whether this motion practice was contemplated at the time of Fried and Wu's

7    apparent settlement of the underlying dispute.[6] In any event, Pamela's opposition to Wells Fargo's

8    motion was due October 4, 2011, and, after reassignment of the case from a magistrate judge to a

9    district judge, the motion was set for hearing on November 9, 2011. (RJN, Ex. H.)

10         Attorney Fried appears to have taken *no action* in response to Wells Fargo's motion. He

11   filed no response to the motion to dismiss, though this Court's Civil Local Rule 7-3 required him to

12   do so; he moved for no alternative or administrative relief; he failed to appear at the November 9

13   hearing on the motion to dismiss. (RJN, Exs. J, K.) It is germane at this point to take judicial notice

14   of the Decision and Order of the State Bar Court of California, issued on July 24, 2014 and available

15   at http://members.calbar.ca.gov/courtDocs/12-O-16426-2.pdf, that found Fried culpable of

16   numerous instances of professional misconduct in the years 2010 through 2013, involving, among

17   other things, taking fees "under the guise of rescuing . . . troubled homeowners from foreclosures"

18   and then failing to provide services; failing to appear for scheduled hearings; and withdrawing from

19   representations without court permission. At the time of this writing, the State Bar Court has

20   ordered Fried into inactive status and recommended that he be disbarred and made to pay restitution.

21   Meanwhile, Fried's public California State Bar profile indicates that he has moved to Miami,

22   Florida.[7]

---

[6] Wells Fargo's briefs characterize the promise between Fried and Wu as a promise for Fried to dismiss Pamela's lawsuit, but that fact is outside the pleadings, which state only that Pamela promised to "forbear" from "pursu[ing]" the litigation, as opposed to immediately dismissing the action. (*Compare* Motion at 10 & Reply at 1 *with* FAC ¶¶ 21-23.) Reading the FAC in the light most favorable to plaintiffs, as required in this posture, Fried promised only to do nothing, not to take the affirmative step of dismissal.

[7] *See* http://members.calbar.ca.gov/fal/Member/Detail/257631 (last accessed September 18, 2014).

### D.     SALE OF THE SUBJECT PROPERTY AND DISMISSAL OF THE FIRST LAWSUIT

On October 4, 2011, despite Wells Fargo having promised through its counsel, Wu, to postpone sale of the subject property until October 21, *Wells Fargo auctioned off the property anyway*. (¶¶ 24-25; Ex. O.) Plaintiffs were not told in advance that the subject property would be sold on October 4, a full seventeen days before the date certain by which they had agreed to tender, and Wells Fargo had agreed to accept, the reinstatement amount. (¶ 24.) When Wu was contacted on October 4 regarding the sale, Wu expressed surprise that the property had been sold. (¶ 25.) Plaintiffs attempted at that time to tender the reinstatement amount "and more," but "defendants refused to accept the money." (¶ 26.)

As it happens, October 4, 2011 also was the date that Pamela's opposition to Wells Fargo's motion to dismiss was due in the 2011 Action. As set forth above, her attorney Fried filed no opposition to the motion to dismiss, sought no other relief in the interval between the untimely foreclosure sale and the November 9, 2011 motion hearing, and then failed to appear at the hearing. (*See* RJN, Ex. H.) Following the November 9 hearing, the presiding judge issued a minute order granting Wells Fargo's unopposed motion to dismiss. (2011 Action, Dkt. No. 13.) A formal order to the same effect followed on November 14. (*Id.*, Dkt. No. 15 ("November 14 Order").) The November 14 Order dismissed all six claims in the 2011 Complaint. The Court "not[ed]" plaintiff's failure to prosecute the action, but dismissed her claims for other reasons. The Court dismissed Pamela's first four claims because they were preempted by federal law, and the last two because they were not cognizable causes of action under California law. The presiding judge expressly dismissed each claim "with prejudice." Concurrent with the November 14 Order, the Court entered final judgment in favor of Wells Fargo as to all claims. (*Id.*, Dkt. No. 16.)

Roughly two months later, on January 13, 2012, the Court ordered Pamela to show cause why the Court should not dismiss her claims against NDeX, a "nominal defendant against whom no affirmative relief was sought." (*Id.*, Dkt. No. 18.) Fried entered his first post-removal appearance in the 2011 Action by appearing at the January 26, 2012 show-cause hearing. Pursuant to the Court's direction at the hearing, on January 29, 2012 Fried filed a motion to enter the default of NDeX. (*Id.*, Dkt. No. 20.) Concurrently, Fried filed a three-page motion seeking to amend the complaint to add

Western National as a defendant and to allege new facts against Wells Fargo, despite the Court's previously having entered a final judgment as to Wells Fargo. (*Id.*, Dkt. No. 21.) The Clerk entered the default of NDeX. (*Id.*, Dkt. No. 22.) The Court also denied the motion to amend—on technical grounds as to Western National and on preclusion grounds as to Wells Fargo—but issued guidance for seeking further amendment, as well as a deadline by which to do so. (*Id.*, Dkt. No. 23.) In a separate order, the Court vacated the default of NDeX because Fried had failed to serve NDeX properly. (*Id.*, Dkt. No. 24.)

Nearly three months passed without any further action from Fried. The deadline to amend lapsed. On June 15, 2011, the Court ordered all claims against remaining defendant NDeX dismissed for failure to prosecute and entered a final judgment in favor of NDeX as to all claims. (*Id.*, Dkt. Nos. 25, 26.) With judgment previously having entered as to Wells Fargo, the Clerk closed the file on the 2011 Action.

### E. PROCEDURAL HISTORY

On August 1, 2012, plaintiffs (i.e., both Pamela *and* Marilyn), having retained a new lawyer (their current counsel of record, Paul J. Smoot), filed the instant lawsuit in San Mateo County Superior Court. (Dkt. No. 1, Ex. 1.) On August 24, 2012, Wells Fargo, with NDeX's consent, removed the case to this Court on diversity grounds. (Dkt. Nos. 1, 2.) On September 6, 2012, Wells Fargo filed a motion to dismiss the complaint which asserted several grounds for dismissal. (Dkt. No. 5.) Notably, res judicata was not among them. On September 26, 2012, NDeX filed a putative "joinder" to Wells Fargo's motion which raised grounds for dismissal going beyond those raised in Wells Fargo's motion. (Dkt. No. 17.) On February 13, 2013, the Court granted Wells Fargo's motion to dismiss but gave plaintiffs leave to amend to add to their pleading numerous facts that their counsel had not alleged in the complaint itself but rather set forth for the first time when opposing the motion to dismiss. (Dkt. No. 26.)

Plaintiffs filed the operative FAC on March 6, 2013.[8] On March 18, 2013, Wells Fargo moved to dismiss but again refrained from raising res judicata. (Dkt. No. 28.) Instead, Wells Fargo

---

[8] The FAC fails to include a jurisdictional statement and thus is non-compliant with Civil Local Rule 3-5(a). This defect is merely formal and does not affect the Court's jurisdiction, which

challenged the existence and enforceability of any oral agreement, as well as plaintiffs' standing to seek an accounting.  (*Id.*)  The Court denied Wells Fargo's motion in its entirety on June 4, 2013.  (Dkt. No. 33.)

On June 21 and 25, 2013, respectively, NDeX and Wells Fargo filed their answers to the FAC.  NDeX's answer sets forth 13 affirmative defenses, the eighth of which is the common interest privilege Wells Fargo asserts in the Motion at bar.  (Dkt. No. 36.)  NDeX's answer does not, however, plead the affirmative defenses of res judicata or litigation privilege.  (*See generally id.*)  As to Wells Fargo, its initial answer pled res judicata as an affirmative defense, but not the privilege defenses it now asserts.  (Dkt. No. 37.)

On July 22 and 23, 2013, Wells Fargo filed administrative motions to have this case related to the 2011 Action under Civil Local Rule 3-12.  Wells Fargo had to file two motions because it either misread or ignored Rule 3-12 and filed one of its motions in this case, rather than, as provided by the rule, in the earlier-filed case.  The undersigned judge denied Wells Fargo's improper motion on July 24, 2013.  (Dkt. No. 39.)  On August 19, 2013, the judge who presided over the 2011 Action denied the motion before her as well, citing, inter alia, Wells Fargo's inexplicable delay in bringing the motion only after two rounds of Rule 12(b)(6) motions.  (2011 Action, Dkt. No. 28; *see also* Civ. L.R. 3-12 (requiring prompt filing of any motion to relate).)   Neither order denying Wells Fargo's motions to relate mentioned that the timing of those motions is consistent with judge-shopping, though, admittedly, it also is consistent with an utter failure to investigate.  The record supports either interpretation—indeed, both at once.

The undersigned held an initial case management conference on October 21, 2013.  (Dkt. No. 55.)  Plaintiffs' counsel failed to appear.  (*Id.*)  The Court issued an Order to Show Cause why sanctions should not issue for that failure.  (Dkt. No. 57 ("OSC").)  Plaintiffs' counsel filed a declaration that he had suffered a computer crash which led to a calendaring error.  (Dkt. No. 58.)  The Court discharged the OSC without a hearing, effectively letting counsel off with a warning.  (Dkt. No. 59.)

---

rests on diversity of citizenship.  *See* Fed. R. Civ. P. 8(a)(1); *see also* Dkt. No. 1; *Rouse v. Wachovia Mortgage, FSB*, 747 F.3d 707 (9th Cir. 2014).

In December 2013, Wells Fargo moved for leave to file an amended answer.[9] (Dkt. No. 61.) The motion sought leave to amend to add the litigation privilege and common interest privilege defenses Wells Fargo now asserts. Wells Fargo's counsel Michael Rapkine also filed a declaration explaining why he was seeking to assert new legal defenses more than year into the case and after the FAC had survived a Rule 12(b)(6) motion: the former lawyer on the case, Tim G. Ceperley, had left Anglin Flewelling, and Rapkine, in examining the original answer, noticed that Ceperley had omitted "several important affirmative defenses." (Dkt. No. 61-1 ("Rapkine Decl.") ¶¶ 2-4).) Rapkine declared that, upon noticing Ceperley's perceived oversight, he "contacted plaintiffs' counsel (Paul Smoot) by telephone and inquired whether he would be willing to stipulate to Wells Fargo's filing of an amended answer." (*Id.* ¶ 4.) Rapkine then relates that Smoot told Rapkine that "he personally" did not object to the amendment, but could not do so because his clients were unwilling to stipulate. (*Id.* ¶¶ 4, 6; Dkt. No. 2-3.)

Inexplicably, Smoot failed to oppose Wells Fargo's motion to amend. The Court granted Wells Fargo's motion as unopposed, noting that leave to amend pleadings is presumptively granted and that it is the party opposing a motion for leave to amend who bears the burden of showing why leave should not be granted. (Dkt. No. 65; *see also Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (Ninth Circuit has "liberalized the requirement that affirmative defenses be raised in a defendant's initial pleading" such that even an unpleaded affirmative defense could be raised for the first time in a summary judgment motion).) The Court also noted plaintiffs' failure to file any sort of response to the motion, in contravention of the Court's local rules, and warned again of sanctions. (Dkt. No. 65 at 1 n.1.) Wells Fargo filed its amended answer containing its litigation privilege and common interest privilege affirmative defenses on January 6, 2014. (Dkt. No. 66.) On January 9, 2014, Wells Fargo filed the instant motion for judgment on the pleadings on the basis of res judicata and its two newly added privilege defenses.

---

[9] Also in December 2013, but of lesser note, NDeX filed a request to appear by telephone at a planned mediation hearing, which the Court denied because it ignored the process set forth in the Court's ADR Local Rules. (Dkt. Nos. 62, 63.) Indeed, NDeX's very filing of that motion violated the rules, because NDeX filed it before the presiding judge in the case instead of the ADR Magistrate Judge. *See* N.D. Cal. ADR Local Rule 6-10(d) (requests to be excused from personal attendance at court-sponsored ADR "may not be filed or disclosed to the assigned judge").

9

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); Fed. R. Civ. P. 12(c). The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6). *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678–79.

In ruling on a motion for judgment on the pleadings, the Court may consider documents incorporated by reference in the pleadings and "may properly look beyond the complaint to matters of public record" that are judicially noticeable. *Mack v. South Bay Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104 (1991); *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir. 1987). The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

## IV. DISCUSSION

Wells Fargo asserts that any one of three affirmative defenses entitle it to judgment on the pleadings: (1) res judicata, (2) the litigation privilege provided by California Civil Code section 47(b), and (3) the common interest privilege provided to trustees in non-judicial foreclosure proceedings by operation of California Civil Code section 47(c)(1). The Court addresses these three defenses in order and then addresses NDeX's joinder.

### A. RES JUDICATA

Wells Fargo moves for judgment on the pleadings on the ground that the judgment entered in its favor in the 2011 Action brought by Pamela, though not Marilyn, was a final judgment on the merits to which this Court should afford preclusive effect binding both plaintiffs. For the reasons set forth below, the Court concludes that the 2011 Action does not bar this litigation because, although

the earlier judgment was final and on the merits, and Pamela and Marilyn were in privity for purposes of that action, careful application of federal res judicata principles reveals an insufficient identity of claims asserted in the two lawsuits.[10]

The federal law of res judicata applies in this diversity action because judgment in the 2011 Action was rendered by a federal court. *See*, *e.g.*, *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000). The federal law of res judicata "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.*

In this case, the analysis turns on the first element, for it is beyond serious dispute that the second and third elements are satisfied. As to the second element of a final judgment on the merits, dismissal with prejudice operates as a judgment on the merits. Fed. R. Civ. P. 41(b); *Owens*, 244 F.3d at 714; *Weekes v. Atl. Nat. Ins. Co.*, 370 F.2d 264, 268 (9th Cir. 1966). Here, the presiding judge in the 2011 Action entered final judgment as to Wells Fargo after dismissing each of Pamela's claims with prejudice.[11] As to the third element of identity or privity between the parties, both Wells Fargo and NDeX were defendants in the 2011 Action, so they are identical parties. Turning to plaintiffs, privity between a non-party and a party exists where the non-party's interests "were represented adequately by a party in the original suit." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997). Here, only Pamela was a plaintiff in the earlier action. However, she sued on the mortgage encumbering a property in which both she and Marilyn owned undivided one-half interests as

---

[10] Notwithstanding the egregious facts alleged in this case, equitable principles play no role in the Court's application of the doctrine of res judicata here. The Supreme Court has denied the existence of any equitable principle that would permit a federal court to decline to apply res judicata to avoid an injustice. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981); *see also Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (relying on *Federated Department Store* to bar later action where earlier judgment stemmed from plaintiffs' counsel's failure to oppose a motion to dismiss).

[11] To the extent, if any, that the earlier judgment rests on a failure to prosecute, it operates as a final judgment on the merits. *See Owens*, 244 F.3d at 714.

1 tenants-in-common. Their interests in the litigation were, as a legal matter, substantially identical.

2 The pleadings establish that the requirements of a final judgment on the merits and identity or

3 privity of the parties are satisfied. Thus, res judicata will apply here if the first element of an

4 "identity of claims" is satisfied.

5 Given that res judicata may bar claims that might have been raised in earlier litigation but

6 were not, the term *identity* of claims is something of a misnomer.[12] The claims in each action need

7 not be literally identical. Rather, the concept of identity of claims subsumes four criteria, which

8 courts in the Ninth Circuit

> do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.

*Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). The first element, whether the two suits arise out of the same nucleus of facts, is the "central criterion." *Owens*, 244 F.3d at 714. Determining "whether the two suits share a common nucleus of operative fact" requires the use of a "transaction test." *Mpoyo*, 430 F.3d at 987 (citing *Int'l Union of Operating Engineers-Employers Const. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir. 1993)).[13] "Whether two events are part of the same transaction or series depends on

---

[12] A leading treatise, in tracing the historical development of contemporary res judicata principles from the merger of law and equity, the first development of state code pleadings, and the advent of the Federal Rules of Civil Procedure, has noted that "[t]he legacy of history is evident in the relatively recent and even current federal decisions that use a wide variety of phrases and formulas in the attempt to describe the general scope of claim preclusion." Wright & Miller, 18 FED. PRAC. & PROC. JURIS. § 4407 (2d ed.). These formulas "have been substituted in contemporary opinions for any effort at more precise definition" of a claim or cause of action. *Id.* The treatise suggests that contemporary imprecision in these definitions may be related to a desire to achieve a moderate approach to claim preclusion that balances "[t]he desire to achieve efficiency and repose . . . against the fear of forfeiting just claims and recognition that rational models of joinder should not always prevent sensitive response to the less rational realities of actual litigation." *Id.* Importantly, this balance is not to be struck through inconsistent application of res judicata principles, but rather through optimal calibration of those principles in the first instance. *Id.*

[13] In the res judicata context, the Ninth Circuit has not always outlined the limits of a "claim" or "cause of action" with precision, and, indeed, the cases evince arguable inconsistencies. *Compare Mpoyo*, 430 F.3d at 987 (emphasizing importance of common nucleus of operative fact) *with*

whether they are related to the same set of facts and whether they could conveniently be tried together." *Id.* (quoting *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)).  The Ninth Circuit has often held this inquiry into whether the events form a "convenient trial unit" to be "outcome determinative" and thus predominant over the other criteria.  *Id.* at 988; *see also Karr*, 994 F.2d at 1429-30 (collecting cases).

   Here, the Court finds that the two actions (i) do not share a common nucleus of facts that would form a convenient trial unit, (ii) concern different rights, and (iii) would rely on substantially different evidence.  First, the 2011 Complaint, while no model of clarity, appears to bring claims based on two essential sets of factual allegations: (1) Wells Fargo's refusal to provide a loan modification (2011 Complaint ¶¶ 12-15, 20) and, contradictorily or, perhaps, in the alternative, (2) Wells Fargo's lack of standing to enforce any rights under the mortgage, including to give a loan modification, but also to foreclose on the property (2011 Complaint ¶¶ 18, 22).  Because these theories are pleaded in a conclusory and muddled fashion, locating their "nucleus" of fact is an uncertain proposition.  As best as the Court can discern, the 2011 Complaint alleged that Wells Fargo offered a loan modification it had no right to offer but, if it did have such a right, failed to provide.  Trial of these theories would focus on, on the one hand, proof of Wells Fargo's acquisition of the right to foreclose and, on the other, Pamela's telephonic contacts with Wells Fargo in August 2011 when she sought loan modification.  In contrast, the current action focuses on Wells Fargo's later promise, through its counsel Wu, to postpone a contemplated foreclosure sale and to accept plaintiffs' tender of the reinstatement amount.

   The second and third criteria, concerning the rights implicated, may be considered together.  *Mpoyo*, 430 F.3d at 987.  The rights impinged in the 2011 Action allegedly were the contractual right to receive a loan modification emanating from the mortgage documents themselves, or, in the alternative, the right not to be foreclosed upon by a party who lacks standing to do so.  Here, in contrast, Wells Fargo's right to foreclose is taken for granted, and, though the FAC mentions in its account of the case's background facts that plaintiffs sought a loan modification, it bases no claims

---

*McClain v. Apodaca*, 793 F.2d 1031, 1033 n.3 (9th Cir. 1986) ("A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.") (quoting *Nevada v. United States*, 463 U.S. 110, 130 n.12 (1983)).

on that fact. (FAC ¶¶ 18-19.) Rather, the FAC focuses on the right to have Wells Fargo honor its oral promise to postpone the foreclosure sale in exchange for plaintiffs' promise to tender the reinstatement amount and forgo pursuit of litigation or bankruptcy. The primary rights and the wrongs alleged are different.

Finally, the evidence required to try this case would differ substantially from that required to try the 2011 Action. The events alleged in each case arguably overlap to a degree, insofar as the efforts to obtain a loan modification which lay at the center the 2011 Action form part of the backdrop of the instant action, but in the main the two cases concern different people, different documents, different conversations, different promises, and different alleged breaches of those promises.

None of the four criteria support a finding of identity of claims. Accordingly, the Court finds that the required elements of res judicata are not present here. Wells Fargo's Motion is **DENIED** as to that defense.

### B.    LITIGATION PRIVILEGE

Wells Fargo contends that the litigation privilege bars plaintiffs' claims because they "are predicated on alleged settlement discussions between attorney Jonathan Fried and defense counsel Gene Wu during the prior Postlewaite litigation." (Motion at 10 (citing FAC ¶¶ 21-26).) As set forth below, Wells Fargo's argument does not persuade.

California Civil Code section 47(b) codifies the litigation privilege. It "applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" *Malin v. Singer*, 217 Cal. App. 4th 1283, 1300 (Cal. Ct. App. 2013), review denied (Oct. 23, 2013) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (Cal. 1990)). "The privilege is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." *Id.* (internal quotation marks and citations omitted). "Settlement negotiations have been found to fit within this privilege." *Torres v. Unum Life Ins. Co. of Am.*, C 08-1940 MHP, 2009 WL 69358, at *12 (N.D. Cal. Jan. 9, 2009) (citing

*Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal. App. 4th 17, 23 (Cal. Ct. App. 2002); *Rosenthal v. Irell & Manella*, 135 Cal. App. 3d 121 (Cal. Ct. App. 1982)).

However, the litigation privilege is not designed to provide a broad shield against *any* liability arising from conduct related to litigation. It is rooted in "common law principles establishing a defense to the tort of defamation." *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (Cal. 2007). In modern times, the California Supreme Court has extended the litigation privilege to cover other torts, excepting the tort of malicious prosecution. *Id.* at 1241-42. However, the privilege immunizes litigants "from liability *for torts*." *See Silberg*, 50 Cal. 3d at 214 (emphasis supplied); *see also Action Apartment Ass'n,* 41 Cal. 4th at 1241 ("principal purpose" of litigation privilege is to protect litigants and witnesses from "derivative tort actions"); *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 952 (Cal. 2007) (litigation privilege "generally protects from tort liability"). That is, "the privilege is generally described as one that precludes liability in tort, not liability for breach of contract." *Navellier v. Sletten*, 106 Cal. App. 4th 763, 773-74 (Cal. Ct. App. 2003) (collecting cases).

Here, the claims of the FAC sound in contract, not tort. The gravamen of the FAC is Wells Fargo's alleged breach of an oral promise to postpone a foreclosure sale and to accept arrearages before a date certain in exchange for plaintiffs' promise to tender the arrearages and to forbear from pursuing further litigation or bankruptcy. It is, in short, a claim for breach of an oral contract. Indeed, Wells Fargo's earlier Rule 12(b)(6) motion recognized as much by moving for dismissal on grounds related to contract formation and performance. (Dkt. No. 28 at 4-5.) And the Court denied Wells Fargo's earlier motion after analyzing its arguments in terms of the law of contracts. (Dkt. No. 33 at 4-6.) Wells Fargo's instant Motion fails to observe the litigation privilege's purpose of insulating litigants from most derivative tort liability, but not necessarily from contract liability. By failing to address the boundaries of the privilege, Wells Fargo supplies no reason to extend those boundaries beyond their usual scope to encompass plaintiffs' contract claims here. Hence, even if the Court were to conclude that the circumstances of the case triggered the privilege—a question it need not and does not reach—Wells Fargo fails to persuade that the privilege would bar the contract claim asserted here.

1  Wells Fargo's assertion of the litigation privilege is misplaced.  Accordingly, the Motion is
2  **DENIED** insofar as it rests on the litigation privilege.

### C. COMMON INTEREST PRIVILEGE

"[T]he common interest privilege applies to 'a communication, without malice, to a person interested therein . . . by one who is also interested.'"  *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 339 (Cal. Ct. App. 2008) (quoting Cal. Civ. Code § 47(c)).  Like the litigation privilege exception also codified in Civil Code section 47, this privilege originally applied only to defamation actions but now applies to tort actions generally, excepting the tort of malicious prosecution.  *See id*. at 336.  The California Court of Appeal has held that the common interest privilege immunizes the non-malicious communications of trustees during foreclosure proceedings, as well as the communications of "beneficiaries insofar as they may act as trustees."  *Id.* at 340.  Sending a notice of default is an act a beneficiary may undertake "as a trustee."  *See id.* at 340-41.

Here, Wells Fargo contends that the common interest privilege shields it from liability for ordering NDeX, as the foreclosure trustee, to institute foreclosure proceedings.  (Motion at 11 ("[A]s beneficiary under the deed of trust, Wells Fargo was cloaked in a qualified privilege when it directed its trustee to proceed with the foreclosure.").)  That argument fails because, as was the case with Wells Fargo's litigation-privilege argument, Wells Fargo fails to recognize that the privilege at issue generally covers tort liability but that here plaintiffs' claims sound in contract.  Wells Fargo's failure to recognize this elementary principle comes perilously close to a breach of its counsel's Rule 11 duties, particularly given that the principle is clearly established in the cases that Wells Fargo itself cites.  *Kachlon*, 168 Cal. App. 4th at 343 (slander of title and negligence claims); *Smith v. Hatch*, 271 Cal. App. 2d 39 (Cal. Ct. App. 1969) (defamation); *Martin v. Kearney*, 51 Cal. App. 3d 309, 311-12 (Cal. Ct. App. 1975) (libel); *Permito v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 55977, at *24-25 (N.D. Cal. Apr. 20, 2012) (slander of title); *Bouyer v. Countrywide Bank, FSB*, 2009 U.S. Dist. LEXIS 53940 (N.D. Cal. June 25, 2009) (slander of title); *see also Snyder v. Wachovia Mort.*, 2010 U.S. Dist. LEXIS 68956 at *17-19 (E.D. Cal. July 9, 2010) (noting, when dismissing inchoate claim under California Civil Code section 2923.5, that California's common

interest privilege applies to "*tort* claims other than malicious prosecution") (emphasis supplied) (citing *Hagberg v. California Fed. Bank FSB*, 32 Cal. 4th 350, 361 (Cal. 2004)).

Wells Fargo's Motion is **DENIED** insofar as it rests on the common interest privilege.

### D. NDEX'S JOINDER

On January 31, 2014, NDeX filed for the third time a paper styled as a "joinder" to Wells Fargo's Motion but which offered argument going beyond that asserted in the motion it purportedly joins. NDeX's joinder fails to persuade that NDeX's dismissal from this action is warranted. First, to the extent it truly is a mere joinder in Wells Fargo's Motion, it fails to the extent that the Motion has. Second, and more critically, in joining Wells Fargo's Motion, NDeX has sought to assert affirmative defenses of res judicata and litigation privilege which are not pleaded in NDeX's answer. (Dkt. No. 36.) Third, to the extent that the Joinder relies on NDeX's "limited" role in the foreclosure proceeding, NDeX asserts facts outside the pleading. The Joinder supplies no grounds to dismiss NDeX from this lawsuit.

### V. CONCLUSION

For the reasons set forth above, Wells Fargo's motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs concede that their fourth claim, for an accounting, should be dismissed, and therefore the Court **DISMISSES** that claim. Otherwise, the Motion is **DENIED**.

The Court shall hold a trial-setting conference at 2:00 p.m. on **Monday, November 3, 2014**, in Courtroom 1 of the United States Courthouse located at 1301 Clay Street in Oakland, California. At least five business days prior to the November 3 conference, the parties jointly shall submit a proposed pretrial and trial schedule with an anticipated trial date in the spring of 2015.

This Order terminates Dkt. No. 67.

**IT IS SO ORDERED**.

Date: September 24 , 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**